748 P.2d 507

**Scott J.L. LUKOSKI, Plaintiff–Appellee,**

v.

**SANDIA INDIAN MANAGEMENT COMPANY, Defendant–Appellant.**

**No. 16462.**

Supreme Court of New Mexico.

Jan. 7, 1988.

Grammer & Grammer, David A. Grammer, III, Albuquerque, for defendant-appellant.

Turpen & Wolfe, Donald C. Turpen, Albuquerque, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

Scott J.L. Lukoski brought a wrongful discharge action against his employer, Sandia Indian Management Co. (SIMCO). Lukoski had been employed as general manager of the Sandia Pueblo bingo operation. In a bench trial, the court decided that SIMCO violated the termination procedures prescribed for "less serious" offenses by an employee handbook. For salary due on the remaining term of his one-year oral contract, Lukoski was awarded $18,629.05. We affirm.

The court found that, in October 1983, Lukoski and SIMCO entered into a one-year oral employment agreement under which Lukoski would provide services as the general manager of a bingo hall opera-

tion for a specified annual salary plus commission. There was no written agreement between the parties. In February 1984, SIMCO distributed to all employees an employee handbook and requested each to sign the last page as verification of receipt, acknowledgement of acceptance, and agreement to conform with the stated policies and procedures. After Lukoski signed the back page as requested, it was placed in his personnel file. The court concluded that:

> The parties amended the oral employment contract * * * when [SIMCO] proffered, and [Lukoski] signed, [the] Employee's Handbook containing new duties and obligations on the part of employee and employer over and above said oral contract, including Rules to be obeyed by [Lukoski] and a termination procedure to be followed by [SIMCO].

■ Although we determine the above-quoted language is a finding of ultimate fact, rather than a conclusion of law, that is of no consequence. *See Hoskins v. Albuquerque Bus Co.,* 72 N.M. 217, 382 P.2d 700 (1963); *Wiggs v. City of Albuquerque,* 57 N.M. 770, 263 P.2d 963 (1953). SIMCO challenges this finding and for the first time on appeal raises two other issues. First, it claims that Lukoski, as general manager, was not the type of employee intended to be covered by the handbook. Distribution to all employees with request for signatures constituted evidence to the contrary, and resolution of any ambiguity regarding management personnel would have been a specific question of fact. *See Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980). Second, SIMCO claims that any breach was not material because it neither went to the substance of the contract nor defeated the object of the parties. Materiality is likewise a specific question of fact. *See Bisio v. Madenwald (In re Estate of Bisio),* 33 Or.App. 325, 576 P.2d 801 (1978). As the contract stood after amendment, it was not materiality, as argued by SIMCO, but rather severity of offense that was at issue under the termination procedures. In any event, by failing to tender requested findings, SIMCO waived specific

findings on these fact issues. SCRA 1986, 1–052(B)(1)(f).

■ There is substantial evidence supporting the court's findings of ultimate fact that the termination procedures became an amendment to Lukoski's contract, and that personality—not the severe offenses of insubordination or disobedience—was the cause for termination. He was terminated without warning or suspension for a cause not so severe as to constitute cause for immediate termination. His personality and interpersonal dealings were found by the court to create an atmosphere of fear and anxiety and bad morale among employees and managers.

Relying only on *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884 (10th Cir.1985), the thrust of SIMCO's appeal is that the language of the employee handbook is "too indefinite to constitute a contract" and lacks "contractual terms which might evidence the intent to form a contract." It maintains that the parties did not conduct themselves as if the employee handbook was to govern Lukoski or as if they expected it to form the basis of a contractual relationship. In support of its position, SIMCO refers to the disciplinary action, suspension, and warning provisions,[1] and argues that the language of the termination policy is ambiguous and contains no required policy for termination.

SIMCO's argument, however, overlooks the handbook's characterization of the disciplinary policy regarding warnings, suspensions and terminations as "an *estab-*

*lished procedure* regarding suspension of problem employees and termination for those who cannot conform to Company Policy." (Emphasis added.) Moreover, the language of the handbook does nothing to alert an employee against placing reliance on any statement contained therein or against viewing such discipline and termination policy as only a unilateral expression of SIMCO's intention that is subject to revocation or change at any time, in any manner, at the pleasure of SIMCO. To the contrary, from the language of the handbook and the conduct of SIMCO in adopting the policy, it could properly be found that the policy was part of the employment agreement.

Whether an employee handbook has modified the employment relationship is a question of fact "to be discerned from the totality of the parties' statements and actions regarding the employment relationship." *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985) (en banc).

> Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it. We do not mean to imply that all personnel manual will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are termina-

---

1. The referenced handbook provisions state:
   **OTHER DISCIPLINARY ACTION:**
   In order to protect the good employees [sic] jobs and Sandia Indian Bingo, there is an established procedure regarding suspension of problem employees and termination for those who can not conform to Company Policy. Suspensions without pay may be given to employees who violate company policies. There are violations which are so severe [including *insubordination and disobedience*] that immediate termination may be necessary....
   **SUSPENSIONS:**
   Suspension without pay may be given when the incident is not sufficiently serious to warrant discharge and/or the particular employee's overall value to the Company [is con-

   sidered], if [in] the opinion of the Department Manager [the employee] warrants another chance. Minimum suspensions are (3) three days, maximum suspensions are (5) five days. No employee may be suspended more than once in a year; thereafter, if the incident would normally warrant suspension he/she must be discharged.
   **DISCIPLINARY WARNING:**
   Disciplinary warning slips will be issued where the offense is less serious and where corrective action may salvage an employee. More than one (1) disciplinary warning, whether for the same offense or not, may subject an employee to suspension or termination. Warning slips become a permanent part of an employee's personnel record.

ble at the will of the employer with or without reason. Such actions * * * instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory. *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984). Here, substantial evidence supports the finding of the trial court that the employee handbook modified the employment relationship and created warning and suspension procedures which were not followed in this case.

Accordingly, based upon the foregoing, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

SCARBOROUGH, C.J., SOSA, Senior Justice, and WALTERS, J., concur.

STOWERS, J., dissents.

STOWERS, Justice, dissenting.

I respectfully dissent from the majority's holding that SIMCO did not abide with the termination procedures.

Substantial evidence does support the findings of the trial court that the employee handbook modified the employment relationship and that Lukoski was terminated for just cause. The trial court erred, however, in concluding that SIMCO did not follow the proper termination procedures. To the contrary, SIMCO did not breach any of the provisions in the employee handbook when it discharged Lukoski without a warning and suspension. The handbook explicitly states that, "there are violations which are so severe that *immediate termination may be necessary.*" (Emphasis added).

Overwhelming evidence was presented at trial to show that Lukowski's violations of company policies were of the type to fall within the category of "so severe" that a warning and any suspension procedures were not required. *See State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 24, 690 P.2d 1016, 1018 (1984). Generally, this evidence indicated that Lukowski had an overall attitude problem towards his employees, other managers and representatives of the Sandia Pueblo to the extent that SIMCO was in jeopardy of losing its bingo contract with the Pueblo; moreover, he was abusive towards the accountants, argued or fought publicly with customers, the assistant bingo manager, the construction supervisor and an admittance clerk; Lukoski also failed to install proper security measures and verification methods, and hired unqualified personnel. Further, testimony indicated that on several occasions, Walker, Lukoski's supervisor, spoke to Lukoski about this attitude problem, and, in fact, interceded on Lukoski's behalf when the Sandia Pueblo desired to discharge Lukoski.

As enumerated in the handbook, Lukoski's violations included, "fighting on company property, refusal to obey reasonable orders of a supervisor, discourtesy to customers, and disobeying or ignoring established written or oral work rules or policies." These are, and I again quote from the handbook, "violations which are so severe that *immediate termination* may be necessary." (Emphasis added.) Therefore, the trial court was in error when it decided that SIMCO violated the termination procedures prescribed for "less serious" offenses in the handbook. Lukoski was not entitled to those termination procedures since his offenses were not of the "less serious" type. Under the circumstances in this case, the only process due Lukoski for the seriousness of his violations was immediate termination. Thus, there was no breach by SIMCO when it discharged him for just cause.

The judgment of the district court should be reversed and this case remanded for dismissal.