857 P.2d 776

**Bill HARTBARGER, Plaintiff–Appellee,**

v.

**FRANK PAXTON COMPANY, Defendant–Appellant.**

**No. 19913.**

Supreme Court of New Mexico.

June 14, 1993.

Rehearing Denied July 21, 1993.

Albert N. Thiel, Jr., Albuquerque, for defendant-appellant.

Jeffrey Romero, Albuquerque, for plaintiff-appellee.

## OPINION

RANSOM, Chief Justice.

This appeal is taken from a judgment entered on a jury verdict in favor of Bill Hartbarger in his action against his former employer, Frank Paxton Company, and the supervisor who fired him, Alan Crownover, for breach of an implied contract of employment. Hartbarger worked as an outside salesperson and was terminated after refusing to accept a lower rate of commission on his sales. Paxton argued there was no implied contract and, therefore, Hartbarger was an at-will employee and no justification was needed for the firing, or alternatively, if there was an implied contract, sufficient justification existed to fire Hartbarger. The jury found there was an implied contract requiring just cause for termination and that the contract was breached, and awarded Hartbarger $400,000 in compensatory damages and $100,000 in punitive damages. Paxton raises numerous points on appeal, essentially arguing that a reasonable jury could not have found there was an implied contract of employment, that if there was a contract it was not breached, and that there was no basis for the award of punitive damages. We reverse.

*Facts surrounding termination.* Hartbarger worked for Paxton for more than twenty years during two periods, the last one beginning in 1977 and ending with his termination in 1987. At the time of his termination, Hartbarger was employed as

one of several salespersons working out of Paxton's Albuquerque operation. Paxton paid its outside sales staff a base salary plus a commission for sales that exceeded a particular amount per month. The commission percentage had varied over the course of Hartbarger's employment from as high as 4¾ percent to as low as 2 percent. Hartbarger's commission had been cut before, once for disciplinary reasons and on another occasion to bring the Albuquerque commission structure more in line with the commissions paid at Paxton's other locations around the country. Just before his termination, Hartbarger's commission rate was 2½ percent, while the commissions of Paxton's other Albuquerque salespersons were 2 percent. Paxton does not dispute that Hartbarger often had the highest sales of the three Albuquerque-based salespersons and that his sales were the highest in the Albuquerque office at the time of his termination. Hartbarger's sales volume was one reason why Hartbarger had a higher commission rate than the other Albuquerque-based salespersons.

Crownover testified that in the months before the termination he had become dissatisfied with the quality of Hartbarger's work effort and recounted several of Hartbarger's perceived improprieties. In February 1987, Crownover wrote an employee evaluation, which he gave to Hartbarger at a March meeting, along with an oral evaluation. Hartbarger testified that Crownover told him that he was (1) not putting forth 100 percent effort, (2) not cooperating, (3) not observing company policies, (4) not taking the initiative (had to be forced), and that (5) his dependability was lacking. After Hartbarger signed the evaluation form, Crownover told him that "it's going to cost you another half percent of your commission." Hartbarger told Crownover that he could not take a cut like that. (When Hartbarger's commission rate had been cut to 2 percent before, after a few months he told Crownover that he needed more money, and Crownover responded with an increase to 2½ percent.) Crownover offered Hartbarger three choices: accept the cut, resign, or be fired. After a pause, Crownover asked what it was going to be. Hartbarger replied that he could not take the first two choices and Crownover said, "Then I guess you're fired." The parties agree that Paxton could change the commission rate at any time and did not need the employee's permission to do so, but Hartbarger argues that implied in the choices presented to him by Crownover was an expectation for productive negotiation and that there was no good cause for an abrupt firing.

■ *Implied employment contracts.* The general rule in New Mexico is that an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise. *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 730, 749 P.2d 1105, 1109, *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988). An at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability. *Id.* New Mexico courts have recognized two additional exceptions to the general rule of at-will employment: wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge. *Id.* The jury below found that there was an implied employment contract between Hartbarger and Paxton permitting termination only for just cause.

This Court has upheld findings of an implied employment contract provision that restricted the employer's power to discharge where the facts showed that the employer either has made a direct or indirect reference that termination would be only for just cause or has established procedures for termination that include elements such as a probationary period, warnings for proscribed conduct, or procedures for employees to air grievances. *See Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (upholding finding of implied contract based on employee manual, words, and conduct of parties); *Kestenbaum v. Pennzoil Co.,* 108

N.M. 20, 24–26, 766 P.2d 280, 284–86 (1988) (affirming finding of implied contract based on words and conduct of parties), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989); *Lukoski v. Sandia Indian Management Co.,* 106 N.M. 664, 667, 748 P.2d 507–510 (1988) (upholding finding of oral contract amended by employee handbook); *Forrester v. Parker,* 93 N.M. 781, 782, 606 P.2d 191, 192 (1980) (holding that, when terminating non-probationary employee, employer is bound by policies established in "personnel policy guide" that control the employer-employee relationship). We have upheld findings that there was no implied contract in cases where the alleged promise by the employer was not sufficiently explicit. *See Shull v. New Mexico Potash Corp.,* 111 N.M. 132, 135, 802 P.2d 641, 644 (1990) (affirming summary judgment in favor of employer where employee had no bargained-for expectations and employee handbook did nothing to alter at-will relationship); *Sanchez v. The New Mexican,* 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987) (affirming grant of directed verdict in favor of employer where language in employee handbook was of a non-promissory nature and was merely a declaration of employer's general approach to the subject matter discussed).

■ *Implied employment contract restricting employer's power to discharge employee is an implied-in-fact contract.* The question whether an employment relationship has been modified is a question of fact. *Lukoski,* 106 N.M. at 666, 748 P.2d at 509. A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct. *See Newberry,* 108 N.M. at 427, 773 P.2d at 1234 (totality of the parties' relationship, circumstances, and objectives are to be considered in determining whether presumption of at-will employment has been rebutted); *Kestenbaum,* 108 N.M. at 24, 766 P.2d at 284 (same). When such a contract is implied, it is implied in fact. *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 381, 710 P.2d 1025, 1036 (1985) (en banc) ("An implied-in-fact contract term ... is one that is inferred from the statements or conduct of the parties. It is not a promise defined by the law, but one made by the parties, though not expressly." (citation omitted)).

■ *Implied employment contracts do not require a factual showing of additional consideration or mutual assent to the implied term.* Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent. *See* SCRA 1986, 13–801 (Repl.Pamp.1991) (definition of contract); *Romero v. Earl,* 111 N.M. 789, 791, 810 P.2d 808, 811 (1991) (stating consideration adequate to support a promise is essential to enforcement of the contract and must be bargained for by the parties); *Trujillo v. Glen Falls Ins. Co.,* 88 N.M. 279, 280, 540 P.2d 209, 210 (1975) (holding mutual assent in contract law is elementary and it must be expressed by the parties).

*—Consideration.* Paxton challenges the sufficiency of the evidence to support an implied contract because there was no evidence that Hartbarger gave additional consideration for any agreement beyond at-will employment.[1] *See Gonzales v. United Southwest Nat'l Bank,* 93 N.M. 522, 524, 602 P.2d 619, 621 (1979) (noting uniform rule, in 1979, that an employment contract for permanent employment not supported by consideration other than performance of duties and payment of wages is terminable at will).[2] However, since 1980 when we

---

1. Paxton requested no instruction on consideration and none was given. While failure to raise the issue below should be dispositive, we address the argument as presented on appeal.

2. The term "permanent employment" is susceptible to a variety of interpretations. In one sense, it might refer to employment for an indefinite period. *See Gonzales,* 93 N.M. at 524, 602 P.2d at 621. In another sense it might refer to employment that is terminable only for just cause. In this opinion, the term "permanent employment" is used in the latter sense and is meant to be interchangeable with "terminable only for just cause." *See Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880, 885–90 (Mich.1980) (discussing interpretation of the term "permanent employment").

recognized an implied employment contract in *Forrester v. Parker*, 93 N.M. at 782, 606 P.2d at 192, we have not required that additional consideration be shown factually. In *Forrester*, a personnel policy guide that set out termination procedures gave rise to an implied employment contract. *Id.; see also Kestenbaum*, 108 N.M. at 24, 766 P.2d at 284 (agreeing that conduct of employer may be sufficient to create an implied contract requiring just cause for discharge) (citing *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917, 925–26 (1981); *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980)).

▆ In *Kestenbaum*, we alluded to the principle that additional, independent consideration was not necessary to establish an agreement not to discharge except for good cause, but we did not fully develop the principle. 108 N.M. at 24, 766 P.2d at 284. We cited *Toussaint*, 408 Mich. 579, 292 N.W.2d 880, which did discuss the prin-

ciple to some extent. The court there explained that in determining the termination rights of the parties, job security could be proven by the conduct of the parties, and consideration could be implied from construing that the employer gave up his right to discharge at will as part of the original agreement. *See Toussaint*, 292 N.W.2d at 890–92. The court rejected the "defendant's claim that the element of consideration ... limits the enforceability of the employer's promise to those instances in which the employee provides some consideration in addition to the services to be rendered." *Id.* at 900 (Ryan, J., specially concurring). We hold today that where there is proof of a promise sufficient to support an implied contract, the consideration sufficient to support the implied contract will be implied as a matter of law by the court whether the promise was part of the original employment agreement or was made later in modifying the employment relationship.[3]

---

3. Additional consideration may serve an evidentiary function in implied employment contracts, indicating that the parties intended to place a limitation on the employer's right to discharge, *see Pugh*, 171 Cal.Rptr. at 925, but the evidentiary function is something distinct from the showing of consideration as an essential element of contract. In stating that a contract with an express or implied term restricting the employer's power to terminate need not be supported by consideration beyond the employee's service, *Pugh* quoted from *Drzewiecki v. H & R Block, Inc.*, 24 Cal.App.3d 695, 101 Cal.Rptr. 169 (1972), a case cited with approval in the earlier New Mexico Court of Appeals case of *Garza v. United Child Care, Inc.*, 88 N.M. 30, 31, 536 P.2d 1086, 1087 (Ct.App.1975). In *Drzewiecki*, the court held the rule that should be followed in California is the one set out in *Littell v. Evening Star Newspaper Co.*, 120 F.2d 36 (D.C.Cir.1941). *Drzewiecki*, 101 Cal.Rptr. at 174.

[W]hen one who enters into a contract of employment[ ] promises not only that he will give his services but also additional consideration ... such facts may be sufficient, in each case, to show the intent of the parties to enter into a contract for permanent employment. ... [W]here no ... intent [for permanent employment not terminable except pursuant to express terms] is clearly expressed and, absent evidence which shows other consideration than a promise to render services, the assumption will be that—even though they speak in terms of "permanent" employment—the parties have in mind merely the ordinary

business contract for a continuing employment, terminable at the will of either party. *Littell*, 120 F.2d at 37. In addition to California, a number of courts have adopted that rationale in recent years. *See Hartman v. C.W. Travel, Inc.*, 792 F.2d 1179, 1180–81 (D.C.Cir.1986) (explaining that presumption that employment is at will applies only when there is no evidence of parties' intent; to determine intent courts look to "such factors as the express terms of the contract, evidence of surrounding circumstances, or the payment of additional consideration"); *Eales v. Tanana Valley Medical–Surgical Group, Inc.*, 663 P.2d 958, 959–960 (Alaska 1983) (stating that the rule that contract for permanent employment is at will unless supported by additional consideration is based on an unsound foundation); *Coelho v. Posi–Seal Int'l, Inc.*, 208 Conn. 106, 544 A.2d 170, 176 (1988) (adopting position that absence of additional consideration does not invalidate a contract expressing intention that employment not be terminable at will); *Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489, 492, (Ky. 1983) (joining "a number of other jurisdictions" in following the rationale of *Littell* ); *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 99–100 (Me.1984) (holding parties may create employment contract terminable only pursuant to its express terms by clearly stating intention to do so); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629 (Minn.1983) (holding requirement of additional consideration and presumption of at-will employment are both rules of construction rather than substance and implied contract needs no additional consideration

—*Mutual assent.* Paxton next challenges the verdict on the ground that there was insufficient evidence to support a finding of the contract element of mutual assent. The jury in this case was given an instruction requiring mutual assent. No objection was made to that instruction,[4] and it is, therefore, the law of this case.

■ We have not addressed previously the issue of mutual assent in the context of an implied employment contract. In *Kestenbaum*, this Court held, under the same instruction requiring an intention to be bound, that there was substantial evidence to support a finding that the parties agreed to a contract that permitted termination only for good cause. There was no evidence, and no requirement, to prove that the parties overtly manifested their mutual assent to the just cause term of employment. We stated that we agreed with the proposition that *oral statements made by an employer may be sufficient to create an implied contract. See Kestenbaum*, 108 N.M. at 24–26, 766 P.2d at 284–286. Similarly, an explicit promise would support the jury's finding of mutual assent here. Further, in *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 791 P.2d 452 (1990), we determined that the verdict finding an implied contract was supported by evidence sufficient to find an express contract, and that the theory submitted to the jury was broad enough to encompass a finding of express agreement. We then held that "the parties' conduct was sufficient to manifest an intention to be bound by the agree-ment." *Id.* at 5, 791 P.2d at 456. The employer there established certain policies and procedures to be followed in termination and prepared an employment agreement stating that employment was subject to applicable personnel practices published to employees. The only evidence of the employee's assent to the policies was the signing of the agreement and that the employee commenced and continued to work. *Id.* at 2, 791 P.2d at 453. In *Forrester, Newberry*, and *Lukoski*, the implied contracts were based on employee manuals and the employers' courses of conduct and oral representations. In those cases, the employers issued policy statements and encouraged the employees to rely upon them. However, in each of those cases there was no evidence presented (beyond the fact that the employees commenced or continued to work) that the employees assented to the policies.

■ When an employer offers to restrict its power to discharge, the employee's assent to the restriction need not be evinced by anything more than commencing or continuing employment. As a matter of public policy, we see no need for any further manifestation of assent. Once the employee has successfully shown that the employer has demonstrated an intent to restrict its power to discharge, absent evidence to the contrary, the court will imply in law that the requirement of mutual assent has been met. There need be no separate factual finding of mutual assent.[5] *Ac-*

where intention of parties is clear); *see also Eilen v. Tappin's, Inc.*, 16 N.J.Super. 53, 83 A.2d 817, 818–19 (Law Div.1951) (explaining that New Jersey had never adopted the additional consideration rule and that the rule "is merely a device created by the courts to test whether or not the parties specifically and definitely intended to make such a contract").

4. The jury was instructed that it could find an implied contract if it found that "the parties by a course of conduct have shown an intention to be bound." Instruction 14, based on SCRA 1986, 13–803 (Orig.Pamp.).

5. Although in an employment contract, terms of consideration and mutual assent may be implied in law, we reiterate that an implied employment contract providing for termination only for just cause is a contract implied in fact; it is based on explicit representations or conduct. An implied-in-law contract, on the other hand, is a duty imposed by law and requires no assent. Restatement (Second) of Contracts § 4 cmt. b (1979) (using the term "quasi contract"). It is not really a contract at all. *See Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 178–79, 793 P.2d 855, 860–61 (1990) (distinguishing between contract implied in law based on obligations created by law for reasons of justice, and contract implied in fact based on parties' mutual assent as manifested by their conduct). An action for retaliatory discharge, for example, lies not as a breach of contract, but as a tort. *See Vigil v. Arzola*, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983) (recognizing the tort of retaliatory discharge), *rev'd in part on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984), *modified by Boudar v. E.G. & G., Inc.*, 106 N.M.

*cord Toussaint*, 292 N.W.2d at 892 (holding employer statements of policy can give rise to contractual rights without evidence of mutual agreement). In this case, *if* Paxton made a sufficiently explicit offer to terminate Hartbarger only for just cause, the same evidence will support a finding of mutual assent. An employer does not have to issue a policy statement limiting its power to discharge, but if the employer chooses to do so and creates a reasonable expectation on the part of the employee, it is bound to fulfill that expectation.

■ *To create an implied contract, the offer or promise must be sufficiently explicit to give rise to reasonable expectations.* The at-will presumption that the employee has no reasonable expectation of continued employment applies only to a single term of an employment relationship—that of the employer's unabridged right to terminate the employee. *See Sheets v. Knight*, 308 Or. 220, 779 P.2d 1000, 1008 n. 13 (1989) (at-will employee is one who has no reasonable expectation of continued employment); *Wagenseller*, 147 Ariz. at 381, 710 P.2d at 1036 (discussing exception to at-will presumption as "implied-in-fact contract *term*" (emphasis added)). The right to terminate is the only provision of an employment relationship that is challenged in a case such as the one at bar, where the employee claims that the employer promised that the employee would be discharged only for good cause. In recognizing the so-called "implied employment contract," we actually have recognized only that an implied-in-fact contract term limiting the employer's right to terminate at will may modify the underlying employment relationship.

■ In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only. Where the alleged term has arisen in a personnel manual, we have required that the manual control the employment relationship to the point that an employee could reasonably expect his employer to conform to the procedures it outlined. *Newberry*, 108 N.M. at 427, 773 P.2d at 1234. We also have stated that " 'if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.' " *Lukoski*, 106 N.M. at 667, 748 P.2d at 510 (quoting *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984) (en banc)); *see also Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 473 N.W.2d 268, 275 (1991) (holding that oral statements of job security must be clear and unequivocal to overcome presumption of at-will employment). An employer creates expectations by establishing policies or making promises. An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.

■ *The evidence in this case does not show a sufficiently explicit offer or promise to terminate only for just cause.* "On appeal, we resolve all disputed facts in favor of the successful party, indulge all reasonable inferences in support of a verdict, and disregard all evidences and inferences to the contrary." *Newberry*, 108 N.M. at 428, 773 P.2d at 1235. We are to consider the totality of the parties' relationship, circumstances, and objectives in determining whether the presumption of at-will employment has been rebutted. Hartbarger has directed this Court's attention to many aspects of the parties' employment relationship, arguing that in totality they demonstrate a sufficient promise to support an implied contract. Under the challenges raised by Paxton, we look only to

279, 280–81, 742 P.2d 491, 492–93 (1987) (allowing retroactive application), *and overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 649–50, 777 P.2d

371, 377–78 (1989) (lowering the burden of proof for retaliatory discharge and allowing recovery of damages for emotional distress).

see if the evidence is sufficient to support a finding that Paxton, by its course of conduct, evinced an intention to discharge Hartbarger only for just cause. There is no assertion that Paxton established policies and procedures for terminations; Hartbarger relies on alleged representations that he would be fired only for just cause.

■ *—The yellow employee handbook.* Paxton published at least two employee handbooks, one in 1975 or 1976 with a yellow cover and one in 1983 with a red cover. Hartbarger acknowledged receiving a copy of the yellow handbook when he rejoined the company in 1977, but denied having received the red handbook. Both handbooks set out company policies regarding compensation and reasons for discipline, outline the company's retirement plan, and contain other sections of information and advice. The evidence is sufficient to support the finding that Hartbarger received the yellow handbook and not the red handbook that contains a disclaimer stating that: "The policies in this book are subject to change.... They are not conditions of employment, and the language is not to be construed as a contract between [Paxton] and [its] employees. Employment is terminable at the will of either the employee or the Paxton division for which he or she works." For purposes of this appeal, we will accept the finding that only the yellow handbook affected the employment relationship between the parties. *Cf. McGinnis*, 110 N.M. at 4–5, 791 P.2d at 455–56 (holding handbook binding on employment relationship where employee had not been issued a copy but employee helped draft the guide, a copy was available in the department where she worked, employees could review guide on request, and it was published to employees in sense of having been made generally known to them and proclaimed officially by employer).

■ Page 10 of the yellow handbook is labeled "Fair and Square Policies." On that page are statements to the effect that Paxton will pay wages that "equal or exceed generally recognized levels prevailing in the area of employment," and that "[e]mployees will be paid and promoted commensurate with ability previously displayed and on length of service." While relating to Paxton's policy of compensation, the "Fair and Square Policies" do not relate to an implied contract requiring just cause for termination. There is no reference to termination on page 10, only general statements relating to Paxton's compensation rates.

Page 11 of the yellow handbook is labeled "Logical and Practical Rules." Near the bottom of the page is a list of "[a]ctions leading to severe disciplinary action or discharge." The list includes, inter alia: dishonesty, insubordination, excessive absenteeism, loafing after previous warnings, abuse of company property, and falsification of any company record for personal benefit. Hartbarger argues that nothing he did is encompassed by any of the categories in that list. We see no reason why the list should be deemed inclusive of all reasons for which an employee might be disciplined or terminated, or indeed, why the list should preclude discharge for no reason at all. There is no statement in the yellow handbook to the effect that the handbook reflects "established procedure regarding suspension of problem employees and termination for those who cannot conform to Company Policy," as there was in the handbook at issue in *Lukoski*, 106 N.M. at 666, 748 P.2d at 509. Neither is there anything suggesting "that the enumerated conduct was the only basis for dismissal, and the rules were consistent with a termination-at-will policy." *Rowe*, 473 N.W.2d at 275 (holding evidence insufficient to support finding of implied contract). We find that there is no language in the yellow handbook that directly or indirectly refers to a policy that Paxton will fire employees only for just cause.

■ *—Paxton's custom of retaining employees for a long time and Crownover's practice of usually only firing employees for a good reason.* Paxton had a history of maintaining long-term employment relationships. During the time that Hartbarger worked for Paxton, no outside salesperson had been terminated. Crownover testified that it was not his custom

and practice to go around firing people and that when he did fire someone, he usually had a good reason. Hartbarger points to this history of long-term employment and Crownover's testimony as an indication that Paxton did not maintain an at-will employment policy. Paxton responds that long-time employment is not inconsistent with an at-will policy and that it should not be penalized for not having fired employees for no reason. We agree. Paxton's retention of other employees for a long time is in itself no indication that Hartbarger had an implied contract requiring that termination be only for just cause. As a matter of policy, this Court will not consider evidence that a company does not usually fire employees without a good reason as *by itself* establishing that the company does not maintain an at-will employment policy. To do otherwise would encourage employers to occasionally fire employees for no other reason than to show that they maintain the freedom to do so.

*—Oral statements by Crownover.* The only oral statements in evidence by any agent of Paxton are statements Crownover made when Hartbarger approached him out of concern that the family-owned Paxton Company was to be sold. Hartbarger recalled asking Crownover what would happen to the employees if the company were sold. Hartbarger testified that Crownover told him in reply that as long as he kept up his sales and took care of what he was doing he would not have anything to worry about. Hartbarger said Crownover assured him that the company was not the kind of company that would sell out and just leave its employees hanging.

Hartbarger argues that these statements could be, and on appeal should be, interpreted as meaning that he would not be terminated as long as he kept up his sales and took care of his job, i.e., unless Paxton had just cause. Because we are to consider the totality of the parties' relationship, circumstances, and objectives, we can consider the context in which this assurance was made and evaluate whether the statement was intended, or reasonably could be interpreted by Hartbarger, to be confirmation of an implied contract or a modification of the employment relationship.

The context was that a concerned employee was discussing with his supervisor what might happen to current employees if the company were to be sold. The supervisor's response to the employee's concerns was to reassure the employee. Hartbarger admitted that he was on a friendly basis with Crownover at the time, that the conversation may have been "off the record," that he knew Crownover had no authority to bind the potential new owners if the sale did occur, and that the entire conversation concerned the new owners, not the current ownership. The assurance was not expressed in terms of a contractual promise. *See Sanchez v. The New Mexican,* 106 N.M. at 79, 738 P.2d at 1324 (language of a non-promissory nature and merely a declaration of employer's general approach lacks specific contractual terms which might evidence intent to form a contract).

The comments by Crownover, on their face, resemble statements made in *Toussaint* and quoted in *Kestenbaum,* 108 N.M. at 24, 766 P.2d at 284. In *Toussaint,* as in *Kestenbaum,* assurances of job security were made to the employees during the hiring process and might legitimately have given the employee an expectation that he would not be fired without just cause. The *Toussaint* court held that an employer's statements of company policy and procedure that it will terminate only for cause can give rise to rights enforceable in contract. *See Kestenbaum,* 108 N.M. at 24–25, 766 P.2d at 284–85. In contrast, Crownover was not making a statement of current or future company policy regarding its employment relationship with Hartbarger; he was expressing an opinion as to job security if the company were to be sold.

Looking at the conversation in context, there is no reasonable interpretation of Crownover's comments that would lead one to believe that Crownover was either making a promise or reaffirming an earlier promise that Hartbarger was anything other than an at-will employee. Hartbarger's

testimony cannot be construed as describing a bargaining for a change in the employment relationship between Hartbarger and the Paxton ownership at that time.

■ *—Written statements by Crownover.* About three months before he was fired, Hartbarger applied for a loan. The lender asked Crownover to fill out a verification of employment form in connection with the loan approval process. Crownover stated on the form that Hartbarger's probability of continued employment was "excellent" and that Hartbarger was "likely" to continue to receive overtime or bonus pay, by which Crownover said he meant commissions. Hartbarger points to the verification statement as indicative of an implied contract requiring just cause for termination. We disagree.

The statements were made to the lender, not to Hartbarger, and clearly could not indicate a modification of the employment relationship. The comments made were the same as might be given for an at-will employee who has been with the company a long time and has been a steady employee. They are not indicative of a modified employment relationship. The comments are no indication that Hartbarger could be terminated only for just cause. They indicate only that, at that time, Crownover did not contemplate firing Hartbarger and thought that he would continue to receive bonuses in the form of commissions. *See Rowe,* 473 N.W.2d at 273 (orally grounded contractual obligation for permanent employment " 'must be based on *more than* an expression of an optimistic hope of a long relationship' ") (emphasis added in *Rowe*) (quoting *Carpenter v. American Excelsior Co.,* 650 F.Supp. 933, 936 n. 6 (E.D.Mich.1987)).

■ The other written statement that Hartbarger points to as evidence of an implied contract is the evaluation form that was given to Hartbarger at the meeting where Hartbarger was terminated. That written statement cannot be construed as modifying the employment contract or as an indication of an implied contract because it contains no statements regarding future employment conditions and was not given to Hartbarger until the meeting that concluded with his termination.

■ *—Paxton's retirement plan.* Pages 20 and 21 of the yellow handbook give a brief description of the employee retirement program that was in place at the time. On page 20, the handbook points out that Paxton "will vigorously resist pension claims presented by any employee involved in theft, conversion or embezzlement of company property." On page 21 there is a paragraph providing that employees who are vested in the pension plan may be entitled to receive their retirement benefits from the Paxton plan at their normal retirement date. Benefits claimed in that manner are subject to forfeiture if the employee was "discharge[d] for theft of company property." There are no references in the retirement program to discharge for any other reason or for voluntary separation.

Hartbarger argues that the retirement plan's policy of contesting benefits if the employee was involved in theft from the company is contra-indicative of an at-will employment policy. We see nothing in the retirement plan that supports Hartbarger's position. The statement that Paxton will contest retirement benefits if termination was for theft of company property is no indication that employees will not be terminated for other reasons. The statement only indicates that a termination for any other reason will not result in a contest of accrued retirement benefits, and that position is consistent with an at-will termination policy.

■ *Totality of the evidence insufficient to support a finding of a promise that employment could be terminated only for just cause.* Viewing all of the circumstances of this employment relationship, we hold that the evidence does not support a finding that Paxton made an offer or promise sufficiently explicit to establish an implied contract. There was no representation sufficiently explicit to con-

stitute an offer not to terminate Hartbarger except for just cause, thus there could be no implied contract to that effect. Therefore, we reverse the judgment against Paxton and remand with instructions to enter judgment in Paxton's favor.

**IT IS SO ORDERED.**

MONTGOMERY and FRANCHINI, JJ., concur.

857 P.2d 788

# SUPREME COURT OF NEW MEXICO

## Denials of Certiorari

| Title | Docket Number | Date of Denial |
|---|---|---|
| Baca v. State | 21360 | 7/28/93 |
| Horne v. Brogan | 21355 | 7/28/93 |
| Jeremy G. v. State | 21368 | 7/28/93 |
| Moreno v. State | 21371 | 7/28/93 |
| Munoz v. State | 21365 | 7/28/93 |
| Najar v. State | 21366 | 7/28/93 |
| NCR Corp. v. Taxation and Revenue Dept. of the State | 21302 | 7/8/93 |
| Simpson v. Freeman | 21361 | 7/28/93 |
| Smith v. State | 21367 | 7/28/93 |

## Writ Granted