28 F.3d 112
 128 Lab.Cas. P 57,716
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Tom CARR, Plaintiff-Appellant,
v.
STRYKER CORPORATION, Defendant-Appellee.
 No. 94-2054.
 United States Court of Appeals, Tenth Circuit.
 July 11, 1994.
 
 ORDER AND JUDGMENT[1]
 Before TACHA, BRORBY and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Carr initiated this diversity action claiming a breach of his employment agreement. The district court ruled, as a matter of law, that Mr. Carr was employed at will and granted Mr. Carr's former employer summary judgment. Mr. Carr appeals asserting he was not an "at-will" employee. We exercise jurisdiction and affirm.
 
 
 3
 The facts are simple and undisputed. Mr. Carr was hired as a sales representative in July 1990. The employment agreement stated Mr. Carr's employment was "at will" and for no definite period of time. The agreement indicated the contract was to be construed by Michigan law. Two months after Mr. Carr was employed, defendant gave to Mr. Carr some written "Rules of Conduct." The applicable portion of these rules state as follows:
 
 
 4
 The rules of conduct listed below have been established to protect the interests of the Company and each individual employee. It should be noted that the list is not meant to be all-inclusive, but contains basic rules necessary to insure a favorable working environment.
 
 
 5
 While it is not the intent of the Company to punish employees, but rather correct unacceptable situations, it should be noted that the following actions will result in some form of corrective action, up to and including suspension or discharge if previous corrective action fails or is not appropriate:
 
 
 6
 * * *
 
 
 7
 8.Failure to report to work or return to work promptly upon expiration of a leave of absence or vacation without giving appropriate management advance notice.
 
 
 8
 * * *
 
 
 9
 Normally infractions will subject an employee to the progressive corrective action practice of verbal notice, written notice, suspension, and discharge (if all prior actions are ineffective in changing undesired behavior); however, specific application of the progressive corrective action practice will depend on the prior corrective action record and the severity and/or frequency of the specific rule violation/incidents with the understanding that more severe incidents will be subject to more advanced correction action steps.
 
 
 10
 The Rules expressly disclaimed any intent to establish a contract between the employer and Mr. Carr. Mr. Carr's employment was terminated in January 1991, due at least in part to an alleged violation of Rule 8 of the Rules of Conduct.
 
 
 11
 Mr. Carr instituted this suit, generally claiming his employer failed to follow certain procedures prior to terminating his employment. Specifically, Mr. Carr asserted the above quoted portion of the Rules prohibited his employer from terminating his employment without first imposing progressive discipline. Mr. Carr also asserted he could not be terminated for missing work so long as management was given appropriate notice of his absence.[2]
 
 
 12
 The district court held the "Rules of Conduct" were not sufficiently promissory or specific to give rise to an enforceable contract and granted summary judgment to the employer. Mr. Carr appeals asserting "[t]he sole issue on this appeal is whether the Defendant's Rules of Conduct' constitute an employment agreement." To that end, the sole theory of contract formation is Mr. Carr's "reasonable expectation" that the Rules created a condition of progressive discipline prior to termination.[3]
 
 
 13
 When this court reviews the grant of a motion for summary judgment we do so de novo which is to say that our duties are precisely the same as the trial court's. We must review the record to determine whether or not there exists a genuine issue of material fact and if not, we must determine whether or not the trial court correctly applied the applicable law. In the case before us there exists no genuine issue of material fact. We apply the choice of law rules of the jurisdiction in which the federal district court sits in a diversity action; in other words, New Mexico law controls our choice of law analysis.
 
 
 14
 New Mexico law recognizes the validity of choice of law provisions contained in contracts. See Stevenson v. Louis Dreyfus Corp., 811 P.2d 1308, 1309 (N.M.1991); Jim v. CIT Fin. Servs. Corp., 533 P.2d 751, 753 (N.M.1975). A choice of law provision will only extend to substantive law, however, and the court is free to apply its own procedural law unless specifically stated otherwise in the parties' contract. See Nez v. Forney, 783 P.2d 471, 473 (N.M.1989). We therefore give effect to the Michigan choice of law provision found in the contract, absent a showing that the parties did not intend to agree on this choice of law provision. See RTC v. Ocotillo West Joint Venture, 840 F.Supp. 1463, 1479 (D.N.M.1993).[4]
 
 
 15
 Michigan was one of the first states to recognize what has now become the majority rule regarding the modification of an employment contract through publication of a personnel manual. In Toussaint v. Blue Cross & Blue Shield, 292 N.W.2d 880 (Mich.1980), the Michigan Supreme Court held policy statements in a personnel manual can limit termination except for cause even through the employment contract is for an indefinite term. The for cause provision may become part of the contract either by express agreement or "as a result of an employee's legitimate expectations grounded in an employer's policy statements." Id. at 885.
 
 
 16
 Michigan courts have since refined the rule of Toussaint, distinguishing between the "contract theory" and the legitimate "expectations theory." See Rood v. General Dynamics Corp., 507 N.W.2d 591, 597-98 & n. 19 (Mich.1993); Rowe v. Montogmery Ward & Co., 473 N.W.2d 268 (Mich.1991). Mr. Carr's appeal argues the latter theory.[5] The first step in analyzing a legitimate expectations claim is to determine what promise, if any, has been made by the employer. Not all policy statements rise to the level of an enforceable promise. "The more indefinite the terms, the less likely it is that a promise has been made. And, if no promise is made, there is nothing to enforce." Rood, 507 N.W.2d at 607. Second, the promise is examined for whether it is capable of instilling a legitimate expectation of amending the employment contract. Id.
 
 
 17
 On a motion for summary judgment, the trial court should examine employer policy statements concerning employee discharge to determine, as a threshold matter, whether such policies are capable of being interpreted as promises and of creating a legitimate expectation of additional termination procedures. See id. If the policies are incapable of such interpretation, the complaint is properly dismissed by the court. If the policies are capable of two reasonable interpretations, the issue is for the jury. Id.
 
 
 18
 We note that Mr. Carr has not claimed he has an expectation of termination only for cause. Mr. Carr's only claim is that he has a right to certain procedures prior to any termination, i.e., the right to some unspecified form of progressive discipline. The same analysis applies nonetheless. We find the Rules of Conduct are vague and nonspecific. For example, the Rules specifically state they are "not meant to be all-inclusive, but contains basic rules necessary to insure a favorable working environment." The Rules continue to state "the following actions will result in some form of corrective action, up to and including suspension or discharge if previous corrective action ... is not appropriate." "Normally infractions will subject an employee to the progressive corrective action ... however, specific application ... will depend on ... the severity and/or frequency."
 
 
 19
 The district court properly concluded the Rules of Conduct were not sufficiently definite to predicate specific relief and were merely a declaration of the employer's general approach. The Rules of Conduct plainly and clearly give to the employer great discretion ranging from the imposition of corrective action to the immediate termination of employment. This great range of discretion contains nothing to utilize as a measuring stick. Were the trial court to find the Rules gave Mr. Carr a right to progressive discipline, it would necessarily have to define the specific progressive discipline. This would be an impossibility under the Rules of Conduct. Likewise, to find the necessity of progressive discipline, the trial court would also have to find the situation was such that termination was not appropriate; again, an impossibility under the Rules of Conduct.
 
 
 20
 We therefore agree, although using Michigan rather than New Mexico law, no reasonable juror could find the employer's Rules of Conduct gave rise to a legitimate expectation of progressive discipline.
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 This second issue was not further developed by Mr. Carr in his brief. This contention is not supported by the record, has no merit and warrants no further discussion
 
 
 [3]
 Mr. Carr also asserts that under New Mexico law, if a contract is susceptible to different meanings, then the jury should resolve the conflict. See C.R. Anthony Co. v. Loretto Mall, 817 P.2d 238, 243 (N.M.1991). This argument must fail as it assumes the contract before us is susceptible to different meanings. We hold, as did the district court, that the Rules are not sufficiently definite to give rise to an enforceable promise. Without an enforceable promise of progressive discipline, there is no ambiguity in interpreting that promise
 
 
 [4]
 The conclusion has little effect on the result because New Mexico courts apply essentially the same legal standard for examining employer policy statements as enforceable promises. See Hartbarger v. Frank Paxton Co., 857 P.2d 776, 783 (N.M.1993) (to be enforceable, a promise must be "sufficiently explicit" to give rise to reasonable expectations), cert. denied, 114 S.Ct. 1068 (1994)
 
 
 [5]
 To succeed under the contract theory, Mr. Carr would have to satisfy the basic elements of contract formation, including mutual assent of the parties. See Rood, 507 N.W.2d at 598. This he cannot do since the Rules expressly disclaim an intent to establish a contract and he has alleged no representations by the employer to the contrary