**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIAM MONTANO; DORIS
LUCERO,

          Plaintiffs-Appellants,

v.

CHRISTMAS BY KREBS
CORPORATION,

          Defendant-Appellee.

No. 07-2235
(D.C. No. 6:06-cv-00308-BB-ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **ANDERSON**, and **BRORBY**, Circuit Judges.

Plaintiffs William Montano and Doris Lucero appeal the district court's

entry of summary judgment in favor of their former employer Christmas by Krebs

Corp. (CBK). They claim that their employment was terminated in a reduction in

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

force (RIF) in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and New Mexico state law. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

*Background*

Defendant operates a plant in Roswell, New Mexico, that manufactures holiday ornaments. Both plaintiffs were long-time supervisory employees. Mr. Montano worked there for thirty-one years, and Ms. Lucero for twenty-four. Because it was a seasonal business, in late September of each year, supervisors were asked to follow a written RIF policy to decide which nonsupervisory workers would be let go at the end of the season. In 2004, CBK suffered major financial losses, so in addition to the customary end-of-season lay-offs, it decided to consolidate or eliminate supervisory positions and to lay off some supervisory personnel in a RIF. Mr. Montano's position was consolidated with another supervisory job and Ms. Lucero's position was eliminated. CBK's executive committee decided that plaintiffs would be discharged in the RIF. Mr. Montano, aged 57, was terminated on November 16, 2004. Ms. Lucero, aged 60, was terminated on December 13, 2004.

Thereafter, both plaintiffs filed for social security disability insurance (SSDI) benefits, claiming they became disabled prior to their respective termination dates. The Social Security Administration (SSA) eventually awarded

benefits to both plaintiffs. Mr. Montano was deemed disabled as of June 2006 and his benefits commenced at that time. Ms. Lucero was deemed disabled as of April 2005 with benefits starting then.

Following their terminations, both plaintiffs also filed complaints with the EEOC and ultimately were issued right-to-sue letters. They filed suit in federal district court on April 17, 2006, asserting that they were selected for the RIF because of their ages in violation of the ADEA. They further asserted that CBK breached an implied contract of employment that was not terminable at will.

The district court granted summary judgment in favor of CBK. Plaintiffs filed a motion to reconsider, which was denied. They do not challenge that ruling on appeal. Rather, plaintiffs argue on appeal that the district court erred in granting summary judgment to CBK on their breach-of-contract and ADEA claims.

*Standards of Review*

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*State-law Implied Contract Claims*

Plaintiffs challenge the district court's grant of summary judgment to CBK on their state-law contract claims. They maintain that an implied contract of employment was created by CBK's RIF policy, oral representations, and past practices, such that their employment was not terminable at will. CBK responds that plaintiffs were at-will employees whose employment could be terminated at any time for any reason.

We apply the law of the forum state, New Mexico, to determine the existence and enforceability of a contract. *See MediaNews Group, Inc. v. McCarthey*, 494 F.3d 1254, 1260 (10th Cir. 2007). Under New Mexico law, "[e]mployment without a definite term is presumed to be at will." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 341 (N.M. 2001). At-will employment "can be terminated by either party at any time for any reason or no reason, without liability." *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993). Plaintiffs rely on an exception to this general rule: "where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge." *Trujillo*, 41 P.3d at 341 (quotation omitted). "A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Hartbarger*, 857 P.2d at 780.

Plaintiffs argue that the following language of the RIF policy is mandatory and thus created an implied contract of employment requiring CBK to follow it before terminating their employment: "Supervisors *must* constantly evaluate their employee's attitude and work practices. . . . Supervisors *need to* formulate a ranking of their employees . . . . Seniority *does* play a role in the decision to lay-off." Aplt. App. Vol. II at 249 (emphasis added). They also assert that the deposition testimony of CBK's President (the RIF criteria "needs to be considered certainly," *id.* at 222), and its Human Resources Director (CBK expected its supervisors and other employees to know and follow the RIF policy), shows that they "considered the ranking process and the criteria discussed in the RIF Policy to be mandatory." Aplt. Opening Br. at 26. In addition, even though the RIF policy specifies that the listed criteria are "not all-inclusive, but [they] will serve as a guide," Aplt. App. Vol. II at 249, plaintiffs contend that the criteria that are listed were mandatory. Finally, plaintiffs argue that because CBK required them, as supervisors, to make a list ranking their employees from best to worst when deciding who to lay off at the end of each season, they reasonably expected that CBK would make a written list ranking the supervisors in the RIF process, but no such list was made. In short, plaintiffs assert that the RIF policy and CBK's actions in previous RIFs created a contract by which CBK could not discharge them except by adherence to the RIF policy. They claim that CBK did not follow

-5-

the RIF policy in deciding to lay them off; therefore, it is liable for breach of contract.

New Mexico law requires "that the totality of the parties' relationship, circumstances, and objectives will be considered to overcome the presumption that the employment contract was terminable at will." *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1234 (N.M. 1989). The RIF policy provides: "Employment is not guaranteed. Employment may be terminated with or without cause and with or without prior notice." Aplt. App. Vol. II at 249. In addition, each plaintiff signed an Acknowledgment of Receipt and Understanding stating, "Nothing contained in the [employee handbook] is intended to create (*nor shall be construed as creating*) a contract of employment (*express or implied*) or guarantee employment for a definite or indefinite term." *Id.* Vol. I at 106; Vol. IV at 496. We recognize that "a contractual disclaimer does not automatically negate a document's contractual status and must be read by reference to the parties' norms of conduct and expectations founded upon them." *McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 457 (N.M. 1990) (quotations and brackets omitted). But plaintiffs' evidence in support of an implied contract to follow the RIF policy falls short in the face of the clear, unequivocal language stating that employment was at will. Plaintiffs have not "shown that the employer has demonstrated an intent to restrict its power to discharge." *Hartbarger*, 857

P.2d at 782.  Accordingly, the district court properly granted summary judgment to CBK on this claim.

*ADEA Claims*

"Under the ADEA, it is 'unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting 29 U.S.C. § 623(a)(1)).  Both plaintiffs were members of the protected class because they were at least forty years of age.  *See* 29 U.S.C. 631(a).

Judicial Estoppel – Social Security Disability Rulings

The district court granted summary judgment to CBK on plaintiffs' ADEA claims based on the doctrine of judicial estoppel, finding that the plaintiffs had not explained the apparent conflict between their statements to the SSA that they were totally disabled prior to their respective terminations, and their ADEA claims that they were qualified for their jobs.  The Supreme Court addressed the similar question of whether a plaintiff is estopped from maintaining a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101-12213, if she has been awarded SSDI benefits.  In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999), the Court recognized the seeming contradiction in a plaintiff's claim that she is unable to work, thus entitling her to SSDI benefits,

and her claim that she was qualified to perform her job.  Nevertheless, the Court

held that such a plaintiff is not precluded from pursuing an ADA claim after being

awarded SSDI benefits.  But "an ADA plaintiff cannot simply ignore the apparent

contradiction that arises out of the earlier SSDI total disability claim.  Rather, she

must proffer a sufficient explanation."  *Id.*

Here, of course, we are faced not with an ADA/SSDI dilemma, but a

possible conflict between an ADEA claim and an SSDI award.  We adopt the

Third Circuit's approach that "a prima facie showing under the ADEA that

conflicts with earlier statements made to the SSA is subject to the same analysis,

as the reasoning of the Court in *Cleveland* also applies in the context of the

ADEA."  *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 117 (3rd Cir. 2003).  Under

*Cleveland*, we first determine whether there is a genuine conflict between

plaintiffs' respective statements to the SSA and their ADEA claims, and if so, we

then evaluate whether their explanations for the inconsistency are sufficient.  *See*

*Cleveland*, 526 U.S. at 806.

CBK argues that *Cleveland*'s reliance on the ADA's requirement that the

employer provide "reasonable accommodation" to the disabled worker, *id.* at 803,

dictates a different result here because the ADEA does not include such a

requirement.  But CBK's concession that both plaintiffs were performing their

jobs satisfactorily, Aplt. App. Vol. II at 228, obviates any inquiry into whether

-8-

either plaintiff could perform his or her job satisfactorily with reasonable accommodation.

We conclude that plaintiffs are not estopped from claiming they remained able to perform their jobs after they were terminated, even though both claimed in their SSDI applications that they became disabled before their employment ended.[1]  In *Cleveland* the Court recognized that "if an individual has merely applied for, but has not been awarded, SSDI benefits [when the statement is made], any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system."  *Cleveland*, 526 U.S. at 805.  Because a plaintiff "may not be sure in advance upon which legal theory she will succeed," the rules of procedure "permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'"  *Id.* (quoting Fed. R. Civ. Proc. 8(e)(2)).

Mr. Montano submitted his SSDI application on March 24, 2006, claiming disability since November 13, 2004, three days before he was terminated.  The agency determined he was disabled and therefore entitled to benefits as of June 2006.  Although his claim of disability starting November 13, 2004, apparently

---

[1]    Ms. Lucero disputes that she said she became disabled on October 12, 2004, stating that she underwent surgery on that date.  Even if she did claim October 12 as her disability date, she is not estopped from pursuing her ADEA claims.

conflicts with his claim that he was able to do his job with CBK on and after the date he was terminated, under *Cleveland*, Mr. Montano was permitted to state alternately or hypothetically that he was disabled as of November 13, 2004, and also able to work as of that date. CBK's admission that he was doing his job satisfactorily when he was laid off in November 2004, coupled with the agency's determination that he was not disabled until June 2006, adequately explains the apparent conflict in his statements. Therefore, Mr. Montano is not estopped from pursuing his ADEA claims.

Similarly, Ms. Lucero filed her SSDI application on January 21, 2005, almost a month after she was terminated, claiming disability since October 12, 2004. In April 2005, she was deemed eligible for benefits and began receiving payments. As with Mr. Montano, CBK conceded that Ms. Lucero was performing her job satisfactorily at the time she was terminated and the agency did not determine that she was disabled until after she was laid off. Ms. Lucero's explanation for the apparently conflicting statements that she was disabled and able to do her job is also sufficient and she also is not estopped from pursuing her ADEA claims.

Therefore, we decline to affirm the district court's ruling that plaintiffs are estopped by their SSDI claims from bringing their ADEA claims.

<u>Direct and Indirect Evidence of Age Discrimination</u>

The district court did not evaluate the parties' evidence pertaining to the ADEA claims because it entered summary judgment in defendants' favor based on its finding that plaintiffs were estopped by their SSDI applications from pursuing them. "Rather than examining and resolving the merits of these contentions, . . . we adopt the better practice of leaving the matter to the district court in the first instance." *Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1310 (10th Cir. 2007). Accordingly, we reverse the judgment in defendant's favor on the ADEA claims and remand for further proceedings.

*Conclusion*

We AFFIRM the district court's summary judgment in defendant's favor on the state-law contract claims. We REVERSE the summary judgment entered on the ADEA claims and REMAND for further proceedings consistent with this order and judgment.

Entered for the Court

Wade Brorby
Circuit Judge

-11-