THOMAS M. CONARD *v.* MITCHELL INDUSTRIES, INC.,
CURTIS E. COCHRAN.

[No. 1-772A28. Filed January 24, 1973.]

*Robison, Robison & Miller,* of Frankfort, *Frank I. Hamilton,* of Greensburg, for appellant.

*Hubert E. Wickens, Don Hubert Wickens, W. Michael Wilke,* of Greensburg, for appellees.

LYBROOK, J.—This appeal arises from a negative judgment in an action on an alleged employment contract, brought by plaintiff-appellant, Thomas M. Conard (Conard) against defendants-appellees, Mitchell Industries, Inc. and Curtis E. Cochran (Mitchell).

In Conard's Motion to Correct Errors and Memorandum in support thereof, he presents four issues: (1) "The decision of the Court is not supported by the evidence and is contrary to the evidence", because "the evidence before the Court *was not sufficient* to support the finding that there was no contract of employment", (Emphasis supplied) (2) "The decision of the trial court is contrary to law", because "the decision of the Court is not supported by the evidence and is contrary to the evidence, because there was *no evidence* put forth by the defendants in their case in chief which rebutted the plaintiff's prima facie case of an implied employment contract and the breach of that contract," (3) "The decision of the trial court is contrary to law in that from the uncontroverted facts established by plaintiff and the controverted facts looking at the case most favorable to the defendant, the facts and the law support a finding in favor of the plaintiff", and (4) "The decision of the trial court is contrary to law" because of the admission into evidence of testimony concerning Mitchell Industries' decline in net worth, instead of the original, written records.

The first three issues raise the same basic contention and will be discussed together.

We must begin with the long standing premise that on appeal from a negative judgment, an allegation of insufficient evidence presents no question for this court. In addition, this court must consider only the evidence most favorable to the appellee. *Wm. J. and M. S. Vesey, Inc.* v. *Hillman* (1972), 151 Ind. App. 388, 280 N.E.2d 88; *Robbins* v. *Roadway Express, Inc.* (1966), 139 Ind. App. 237, 239, 215 N.E.2d 867; *Rasmussen* v. *Smith* (1966), 139

Ind. App. 160, 161, 217 N.E.2d 595; *Kilmer* v. *Galbreth* (1966), 139 Ind. App. 252, 255, 218 N.E.2d 361.

Furthermore, as the Supreme Court said in *Souerdike* v. *State* (1952), 231 Ind. 204, 108 N.E.2d 136:

> ". . . it is only where the evidence is without conflict and leads to but one reasonable conclusion, and the trial court has reached a contrary conclusion, that the decision will be disturbed as being contrary to law."

Appellant maintains that these rules do not apply to the above issues because he has phrased them as being "contrary to law" or "contrary to the evidence". However, as this court recognized in *Retter* v. *Retter* (1942), 110 Ind. App. 659, 40 N.E.2d 385, whether the claim is that the judgment is contrary to law, contrary to the evidence, or both, it raises nothing more than a question of sufficiency of the evidence, if it is based solely on an argument that it is not supported by the evidence.

In the case at bar, there is substantial evidence to support the trial court's finding that there was no contract, express or implied, calling for Conard to receive $24,000.00 annually. Appellant concedes that there is no express contract supporting his claim, asserting that he relies solely on an implied contract between himself and Mitchell Industries.

The evidence most favorable to the appellee is that in 1953 Conard began working for Mitchell Industries, Inc., for $75.00 per week, with the understanding that, "If I made him money that, you know, I'd make money."

Conard testified that, as of 1966, he was being paid a total of $24,000.00 per year; $12,000.00 during the year and $12,000.00 at year-end. At Conard's request, he was paid $15,000.00 during the year and $9,000.00 at year-end for the years 1967 and 1968. The year-end checks each had the word "Xmas" written on them. During 1969, the year in controversy, he was paid $15,000.00 during the year and nothing at year-end. Conard testified that he did not know how the year-end bonus was figured, but that in December, 1966,

Curtis E. Cochran and Ernest Rubush, President and Vice-President of Mitchell Industries, told him that concerning his compensation, "precedents had been set and that I had no worry." Cochran and Rubush both denied this.

Cochran and Rubush testified that they unilaterally determined the amount of the year-end bonus, depending on the company profits and individual performance. They also testified that there was no formula for the determination, that there was no discussion or negotiation of the amount with any employee, and that no precedent had been set. Finally, both testified that Conard was told in early 1969 that "he was not going to get a bonus that year." Conard denies he was so informed, but this conflict in the evidence was a proper matter for the trial court's determination.

The evidence further showed that during 1968 and 1969, the veneer industry in general and Mitchell Industries in particular, declined. In fact, Mitchell Industries' net profit was $206,579.82 in 1967, $25,130.01 in 1968, and the company suffered a loss of $90,242.60 in 1969. Thus, it appears that Conard made more money in 1969 than Mitchell Industries.

From 1968 to 1969 Conard's personal production also declined to a lower level than, and at a greater rate than, the other three buyers.

Two basic principals of contract law, relevant to the case at bar, are:

(1) "An implied contract, that is, one wherein an agreement is arrived at by the acts and conduct of the parties, is equally as binding as an express contract, wherein the agreement is arrived at by their words, spoken or written. In either case it grows out of the intention of the parties to the transaction. If there has been a meeting of minds and the clear intent of the parties to the transaction is evidenced by their acts and conduct viewed in the light of the surrounding circumstances, then the resultant implied contract differs from an express contract only in the mode of proof." *Retter, supra.*

(2) ". . . in order that a contract be valid and enforceable, it must be reasonably, definite and certain, so that the intention of the parties can be ascertained." *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 183 N.E.2d 842.

There was no definite amount of compensation to be paid, nor was there any formula, or ascertainable method for determining the amount of the year-end payment to Conard. In fact, as appellant points out in his brief, Conard himself testified that he "did not know how Mr. Cochran decided upon the bonus or whether he had a formula in figuring it." Conard's admission clearly supports an inference that no definite terms were established and the requisite "meeting of the minds" never existed.

In view of the above holding, we find that appellant's last issue, concerning the admission of certain evidence relative to the decline in appellee's net worth, does not require discussion.

Judgment affirmed.

Robertson, P.J. and Lowdermilk, J., concur.