2001-NMCA-104

35 P.3d 313

**Tommy HUDSON, Plaintiff–Appellee,**

v.

**VILLAGE INN PANCAKE HOUSE OF ALBUQUERQUE, INC.,
Defendant–Appellant.**

**Nos. 20,646, 20,769.**

Court of Appeals of New Mexico.

Oct. 16, 2001.

Charles R. Peifer, Browning & Peifer, P.A., Albuquerque, NM, for Appellee.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} In August of 1995, Paul Bronstein, chief executive officer (CEO) of Village Inn Pancake House of Albuquerque (Village Inn), and son of the sole shareholder of Village Inn, fired Tommy Hudson (Hudson), then president of Village Inn who had worked for the company almost continuously since 1963. This litigation ensued. After a bench trial, the court awarded Hudson damages for breach of an implied contract of employment. Village Inn raises three issues on appeal. First, Village Inn challenges the district court's determination that the parties had an implied contract of employment under which Hudson could only be discharged for just cause following specific warnings and an opportunity to correct deficient performance. Second, Village Inn challenges the amount of damages awarded, and specifically argues that it was improper to include the annual bonus as part of Hudson's income for the purpose of calculating damages. Finally, Village Inn asserts that the district court erred in awarding prejudgment interest because Hudson's motion was untimely. We affirm.

## I. Implied Contract of Employment

{2} First we will discuss the elements necessary to prove the existence of an implied contract of employment. Then we will review the court's findings and the evidence presented to the district court. Lastly, we will discuss the findings of this case in the context of New Mexico law.

### A. Standard of Review

{3} On appeal, Village Inn asserts that Hudson failed to overcome the presumption that his employment relationship was "at will" and that as a matter of law there was no sufficiently explicit promise of continued employment to support the district court's finding of an implied contract of employment. *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 673–76, 857 P.2d 776, 784–87 (1993) (holding that the evidence of oral and written statements, business practice of retaining employees for a long time, and retirement was not an offer or promise "sufficiently explicit to establish an implied contract"). Village Inn agrees, however, that whether an implied contract altering the "at will" relationship has been created is a question of fact. *Id.* at 669, 857 P.2d at 780. Consequently, the standard of review is whether the finding is supported by substantial evidence and as such this Court will view all the evidence in the light most favorable to the district court's findings to make that determination. *See id.*

{4} While there are a number of New Mexico cases regarding implied contracts of employment, we rely primarily on *Hartbarger* because it contains a comprehensive sum-

mary of New Mexico law on implied contracts. When there is no written contract defining an employment relationship, the general rule is that the employment is considered "at will" and the relationship can be terminated at any time by either party for any reason with no liability. *See id.* at 668, 857 P.2d at 779. There are, however, two exceptions to this general rule: retaliatory discharge and implied employment contracts restricting the employer's power to terminate the employment. *See id.* Implied employment contracts have been upheld "where the facts showed that the employer either has made a direct or indirect reference that termination would be only for just cause or has established procedures for termination that include elements such as a probationary period, warnings for proscribed conduct, or procedures for employees to air grievances." *Id.* In this case, witness testimony, language in the Village Inn Pancake House Employee Handbook (the Handbook), and the contents of the forms used by Village Inn provide the factual basis supporting the district court's decision that there was an implied employment contract between Village Inn and its employees.

### B. The District Court's Findings

{5} The following is a summary of the district court's findings. Village Inn was owned by Ben Bronstein. Hudson, the president of Village Inn, had been employed with Village Inn for nearly thirty-two years when Ben Bronstein's son, Paul Bronstein, fired Hudson without prior warning, notice, or explanation, written or otherwise. The district court made an explicit finding that the testimony of Village Inn's CEO, Paul Bronstein, was not credible. The district court also found that Village Inn terminated Hudson's employment without just cause, and Village Inn does not challenge this finding.

{6} Although Village Inn had no written contract of employment with Hudson, it did provide Hudson and its other employees with an employment handbook. The Handbook stated that no employee would be discharged without being given the chance to succeed, and it listed specific instances of misconduct that could result in discharge.

{7} Village Inn had a policy and practice of (1) providing employees with a warning prior to terminating employment for sub-par performance or misconduct; (2) documenting employee warnings in the course of disciplining any employee; (3) giving progressive warnings; and (4) discharging employees only for justifiable cause except where the employee's conduct poses a serious threat to the safety of employees, customers, or property. The use of this policy resulted in significant reduction in the amount of unemployment compensation benefits Village Inn was required to pay and an increased employee morale. Hudson reasonably expected that he was not subject to termination except for justifiable cause after specific warnings and an opportunity to correct deficient performance.

### C. The Evidence

{8} Although the evidence on the issue of the implied contract was conflicting, we review the evidence in the light most favorable to the decision below, resolving all conflicts in the evidence in favor of that decision and disregarding evidence to the contrary. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces,* 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177. The fact that other evidence existed which would have supported different findings does not require reversal. It is the duty of the district court to resolve all the disputed factual issues. *Roybal v. Morris,* 100 N.M. 305, 311, 669 P.2d 1100, 1106 (Ct.App.1983). We will review the evidence in the light most favorable to the decision below. A synopsis of the essential portions of the evidence follows.

#### Patricia Phillips

{9} Patricia Phillips (Phillips), the comptroller and treasurer of Village Inn, testified that she was in charge of the weekly formal training for all assistant managers which included teaching company policies regarding hiring and firing. Phillips testified that she had taught the same policies at informal weekly managers' meetings for twenty-seven years.

{10} Phillips then explained the use of the two main forms that Village Inn had devel-

oped for use in employment situations: (1) the "Just for the Record" form was to be used when a verbal discussion of conduct had not produced satisfactory results, and (2) the "Warning" form was to be used when an employee had violated some rule and the manager needed to communicate the consequences of such action. Although Phillips initially maintained that the forms were management tools only and that their use was not a matter of company policy, on cross-examination she admitted that her deposition testimony was different. At her deposition she had agreed that it was company policy to use the forms and that she had trained assistant managers to give an employee a written warning if they were going to discipline someone. Phillips also testified that the use of these forms significantly benefitted the company by saving it money on unemployment claims. While Phillips also implied that use of the forms was not a company policy because the forms were used inconsistently, it was for the district court to weigh the evidence.

### Tommy Hudson

{11} As president of Village Inn, Hudson had the responsibility to supervise and administer the personnel policies. Consistent with these policies, Village Inn was known to be a fair company to work for. Managers were trained to warn before they fired employees, and an employee who was about to lose his or her job could expect to be told in writing beforehand. Hudson testified that the warning policy was for the benefit of both the company and the employees, and that managers would "get in trouble" if they ignored the policy. Village Inn required managers to have good cause for terminating employees.

{12} Hudson testified that he expected he would be fired only for a good reason or just cause. Ben Bronstein told him that Hudson would be taking over Bronstein's position when Bronstein retired. Shortly after this conversation took place, Bronstein temporarily turned over the operation of all the Village Inn stores to Hudson, Phillips, and another employee for two-and-a-half years. This expression of confidence in Hudson and Hudson's conversation with Bronstein led Hudson to believe that he "was going to be there for a while."

### Ben Bronstein

{13} Ben Bronstein denied that Village Inn had a policy requiring the use of a disciplinary or warning system, and he insisted that all employees, including supervisory employees such as Hudson, worked at the will of his company. He said that the use of disciplinary notices and warnings was discretionary with store managers and supervisors. These tools were used primarily to document terminations in order to avoid unemployment claims.

### Ilene Valtierra

{14} Ilene Valtierra (Valtierra), a former store manager for Village Inn, testified that Village Inn trained her to refrain from discharging employees without any prior warning or write-up. Although the use of warnings and write-ups was a matter for her discretion, in practice she would not have dared to discharge an employee "for not doing their job" without a write-up because she "would have had Pat Phillips on [her] butt." While she believed she had the authority to discharge employees for very serious infractions without giving them any prior warning, she was taught to exercise that authority only if she had justifiable cause. Like Hudson, she expected that she would not be terminated without her supervisor giving her a chance to improve her performance.

### Forms

{15} Various documentary exhibits were also admitted into evidence. One form was a completed "Just for the Record" warning form, written by a store manager and instructing her assistant store manager to document all incidents of poor employee performance. In response to the question on the form asking for a solution, the store manager wrote "Document everything." Various forms admitted into evidence supported the district court's conclusion that it was Village Inn's policy to document progressive employee discipline.

*Handbook*

{16} Hudson also introduced two versions of the Handbook whose material provisions are substantially similar and which support the district court's finding of an implied employment contract. The Handbook in one form or another had been used for approximately twenty years. The Handbook includes a section on performance review and employee conduct, which states, "Village Inn reserves the right to discharge an employee at any time without advance notice for unbecoming conduct or violation of any regulation." While there is no formal grievance procedure outlined in the Handbook, there is a process for handling complaints. The employee is directed to take these matters to his or her direct supervisor and, if the matter is not resolved or there are personal circumstances involved, to take the matter directly to the manager. The Handbook states: "Management is most willing to discuss any problems with you. After discussion with your unit manager, any unresolved situations may be brought to the attention of the General Manager."

{17} The Handbook also specifies conduct that may result in immediate discharge. The section on employee conduct states, "For the protection of our Company and its employees, it is important for you to be aware of certain rules which, if violated, may result in disciplinary [actions] which may include immediate dismissal." Various items are listed such as dishonesty, failure to report to work without a satisfactory reason, violating company policies, and discourtesy to any customer. The last enumerated item in this section states, "You may also be subject to immediate dismissal for justifiable causes other than those listed above."

{18} Hudson's personnel file further supported the district court's finding that Village Inn would terminate employees only on the basis of justifiable cause. The file contained a document which reiterated the Handbook's employee conduct section, including the list of specific grounds for immediate dismissal and the proviso that other justifiable cause could also result in immediate dismissal. Hudson signed the document and thereby indicated his understanding of these rules.

This document clearly implied that an employee could expect continued employment in the absence of conduct constituting justifiable cause.

## D.  Discussion

{19} Viewing the totality of the evidence in the context of applicable New Mexico law, we affirm the district court's finding that Hudson had an implied employment contract with Village Inn. Two New Mexico cases demonstrate the validity of the district court's finding. One case that comes close to being factually on point is *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 426, 773 P.2d 1231, 1233 (1989), where our Supreme Court affirmed a finding of an implied contract. In that case, there was evidence that the plaintiff understood he would have a great future with the company and that the company policy manual was "his bible." *See id.* at 427–28, 773 P.2d at 1234–35. There was evidence that the employees believed they would only be terminated from their jobs for a good reason. The policy manual stated that the employee controlled whether he or she would be discharged as the result of rule infractions, poor performance, or other " 'cause.' " *See id.* at 428, 773 P.2d at 1235. Our Supreme Court asserted that this statement suggested it was the employer's policy not to terminate except for a good reason and determined the totality of the parties' relationship, including the evidence of the manual, was sufficient to affirm the finding that there existed an implied contract of employment. *See id.*

{20} In *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 24–26, 766 P.2d 280, 284–86 (1988), our Supreme Court upheld a finding of an implied contract even in the absence of any employee handbook. In that case, the employer's agent told plaintiff during negotiations that the employment would be permanent as long as the plaintiff did his job, and the employer conceded that in practice management did not terminate employees except for good cause. These facts, when viewed in combination with other employer policy statements regarding insurance benefits and severance pay, supported the jury's finding of an implied contract.

{21} Consistent with *Newberry* and *Kestenbaum,* the evidence in the present case supports the district court's finding of an implied contract of employment. There was evidence that employees were expected to follow the rules and procedures set forth in the Handbook. The Handbook supports the conclusion that Village Inn had a policy not to terminate except for a good reason because it stated that an employee could be subject to immediate dismissal for justifiable causes other than those listed. There was testimony that Village Inn trained its management to issue warnings and document poor work performance before terminating an employee, and that a store manager who disregarded Village Inn's warning forms did so at his or her own peril. Although the Bronsteins offered evidence to the contrary, we view the evidence in the light most favorable to the judgment and conclude there was substantial evidence to support the district court's findings regarding an implied contract of employment.

{22} We reject Village Inn's argument that the facts of this case are more similar to the situation in *Hartbarger,* where our Supreme Court reversed a finding of an implied contract. *See Hartbarger,* 115 N.M. at 676, 857 P.2d at 787. The Court determined that the employer's custom of retaining employees for long periods of time and its practice of only firing employees for a good reason did not by themselves establish the lack of an "at will" employment policy. *See id.* at 674, 857 P.2d at 785. However, in *Hartbarger,* the handbook's provision on "Fair and Square Policies" related only to rates of compensation. *See id.* at 673, 857 P.2d at 784. The Court also found that no language in the handbook directly or indirectly referred to a policy that the employer will fire employees only for just cause. *See id.* Although the employee handbook listed actions that could lead to severe disciplinary action or discharge, there was no indication that this list included a general statement that an employee could be subject to immediate dismissal for other just cause as there was in this case and in *Newberry.* In *Hartbarger,* unlike the present case, there was no assertion that the employer established policies or procedures, such as written warnings for terminations. *See id.*

{23} We affirm the district court's findings regarding the implied contract of employment.

## II. Measure of Damages

{24} Village Inn challenges the inclusion of future bonuses in the measurement of damages, arguing that bonuses were awarded to Hudson entirely at Village Inn's discretion.

### A. Preservation

{25} Hudson asserts that Village Inn failed to preserve the issue by not objecting to any of the damages evidence offered at trial or on appeal. We disagree for two reasons. First, Village Inn elicited testimony from its expert economist about the propriety of including the bonus in the calculation of damages, and Hudson cross-examined this expert on the bonus issue. There are numerous other instances in the record where testimony was elicited about the discretionary nature of the bonus and its calculation. Second, Village Inn's motions for a directed verdict specifically raised this issue. We therefore determine that the issue was preserved at trial. *See generally Martinez v. City of Grants,* 1996–NMSC–061, ¶ 14, 122 N.M. 507, 927 P.2d 1045 (preserving issue by defendant's objection to the jury instructions and motion for a directed verdict at close of trial of all the evidence and motion for a judgment notwithstanding the verdict). We also note that cases assigned to the general calendar are no longer restricted to briefing only those issues raised in the docketing statement. *See* Rule 12–213(A)(3) NMRA 2001. The issue is properly before this Court.

### B. Standard of Review & Discussion

{26} The parties disagree on the appropriate standard of appellate review regarding this issue. Village Inn argues that it was undisputed that the bonus was discretionary; therefore, Hudson had no contractual right to receive any bonus in the future and awarding damages to include the bonus puts Hudson in a better position than he would have been had his employment not been terminated. Village Inn also contends

that Hudson did not prove the fact of his damages regarding the bonus to a reasonable certainty because any future bonus calculation would be contingent on the future financial success of the corporation over a twelve-year period as well as the satisfactory performance by Hudson. Village Inn further argues that the future expectation of future bonuses is not reasonable and cannot support an award of damages as a matter of law. Village Inn argues we should review this issue de novo and hold that the inclusion of any bonus in the award of damages was error. Hudson asserts the issue is really a question of whether substantial evidence supports the district court's award of compensatory damages. We agree with Hudson.

█ {27} In support of its position, Village Inn cites to numerous out-of-state cases that address the issue of whether there was an enforceable contract for bonuses or incentive payments. However, in our view, these cases hold that whether a contractual right to a bonus exists depends on the facts of each case. See Christensen v. Bic Corp., 18 Conn. App. 451, 558 A.2d 273, 275–76 (1989) (holding there was no evidence of an implied contract to pay the plaintiff a bonus); Conard v. Mitchell Indus., Inc., 155 Ind.App. 110, 291 N.E.2d 577, 578 (1973) (affirming the finding that there was no implied contract to pay a bonus); Amant v. Kidde, Inc., 756 F.2d 685 (8th Cir.1985) (affirming the denial of a bonus as a contractual right where it was discretionary and the amount of past bonuses were not based on any fixed schedule); Ashker v. Horizon Offshore Contractors, Inc., 2000 WL 516377 (E.D.La.2000) (affirming the granting of summary judgment regarding plaintiff's claim to a contractual right to a bonus); Automatic Sprinkler Corp. v. Anderson, 243 Ga. 867, 257 S.E.2d 283, 285 (1979) (affirming the judgment that there was no contractual right to an incentive compensation payment where the written employment contract stated that its payment was discretionary); Parrish v. Gen. Motors Corp., 137 So.2d 255, 258 (Fla.Dist.Ct.App. 1962) (affirming the denial of an earned bonus where the written plan stated it was discretionary); Spooner v. Reserve Life Ins. Co., 47 Wash.2d 454, 287 P.2d 735, 738 (1955) (determining a voluntary contribution did not give rise to a contractual right where the company explicitly stated in writing that the company could decrease or withhold the bonus with or without notice).

{28} The evidence presented in this case supports Hudson's right to a bonus. While it is true that Ben Bronstein characterized the bonus plan as discretionary, this does not end the inquiry. In his deposition, Ben Bronstein also stated that everybody assumed if Village Inn was doing well they would get a bonus and that this expectation was rational and reasonable. Hudson testified that based on the years that the program had been in effect, it was understood that bonuses would be paid. Phillips also testified that she considered the bonuses as part of her income. Village Inn's own expert witness presented the district court with a Department of Labor Survey showing that the restaurant industry commonly pays managers through a combination of salary and bonuses. Supervisors at Village Inn were paid compensation consisting of base salary and bonus. Hudson's expert witness testified that he included bonuses in his damage computation because the bonuses had been paid consistently and for a period of years and that it was reasonable to conclude Village Inn would have to continue paying bonuses to keep and attract employees.

{29} Apparently, the district court gave little weight to Bronstein's characterization of the bonus plan: it made no findings based on his testimony. On the contrary, the district court focused on Village Inn's actual practice begun in the early 1980's of paying Hudson a bonus of 3.5 percent of Village Inn's net profit at the end of each fiscal year and made a specific finding on this issue. The district court also made two other direct findings regarding the bonus: first, that Hudson reasonably relied on the bonus as part of his compensation and second, that even after Hudson was fired, bonuses were awarded to other employees who traditionally received bonuses. The findings support the conclusion that the bonus was part of the compensation portion of the implied employment contract. See Herbert B. Chermside, Jr., Annotation, Master and Servant: Regular Payment of Bonus to Employee, Without

*Express Contract To Do So, As Raising Implications of Contract For Bonus,* 66 A.L.R.3d 1075 (3d ed.2001).

{30} Other findings included Hudson's base annual salary amount and what his average salary had been for the four years prior to his termination. The district court awarded damages including the loss of Hudson's base salary, annual bonus, and fringe benefits from the time of the termination of his employment through age sixty-two with the appropriate discount factors. Village Inn did not challenge any of the findings regarding damages. The district court was entitled to consider the historical facts in calculating future lost earnings. *See generally Smith v. FDC Corp.,* 109 N.M. 514, 520–21, 787 P.2d 433, 439–40 (1990) (stating in the context of an employment discrimination case that it was not inappropriate to estimate future lost earnings based on past income). The award of damages is supported by substantial evidence. *See generally Moody v. Stribling,* 1999–NMCA–094, ¶ 37, 127 N.M. 630, 985 P.2d 1210 (stating in a fiduciary duty case damages are determined by "whether they are supported by substantial evidence"). Based on all the evidence, we affirm the use of the bonus in the calculation of damages awarded.

### III. Prejudgment Interest

{31} Village Inn asserts that the district court erred in awarding prejudgment interest because Hudson's motion was untimely and the district court had no authority to extend the time for filing it. Based on the unique circumstances of this case and considerations of the equities involved, we determine that the district court properly entertained Hudson's motion for prejudgment interest.

{32} The district court's judgment specifically contemplated a prejudgment interest award and imposed a deadline on Hudson for filing an appropriate motion. The district court's order awarded compensatory damages "with Plaintiff's claims for prejudgment and post-judgment interest together with any cost issues being decided upon hearing of appropriate Motions filed within [fifteen] days after the entry of this Judgment." On

the fifteenth day after entry of the judgment, Hudson filed a motion to award pre- and post-judgment interest. Two months later, the district court entered its order awarding pre- and post-judgment interest. Village Inn has argued that the post-trial motion for prejudgment interest was a motion to alter or amend the judgment and should have been filed within ten days of the judgment pursuant to Rule 1–059(E) NMRA 2001.

{33} Even if we were to assume without deciding that the June 16, 1999, judgment was final and that the motion for prejudgment interest was required to comply with the time constraints of Rule 1–059, we would affirm the award of prejudgment interest based on equitable considerations. If a party relies to its detriment on a trial court's extension of the time provided by rule, equity will permit the trial court to hear the motion within its discretion. *See, e.g., Pahuta v. Massey–Ferguson, Inc.,* 997 F.Supp. 379, 383 (W.D.N.Y.1998) (applying equitable exception that allows motion for a new trial when counsel relied to his detriment on trial court's extension of time); *Eady v. Foerder,* 381 F.2d 980, 981 (7th Cir.1967) (relying upon district court's order that extended time period was a justifiable excuse for plaintiff's failure to file motion within ten days of judgment); *see also Trujillo v. Serrano,* 117 N.M. 273, 278, 871 P.2d 369, 374 (1994) (permitting an appeal to be heard where the appellant relied on the magistrate court's statement that a judgment would not be issued until the parties were recalled to court but the magistrate court then filed the judgment without giving notice to the parties, causing the untimely filing of the appeal). Hudson relied on the language of the order allowing fifteen days to file his motion for prejudgment interest. Village Inn did not object to the time frame permitted by the order until it filed its response to the motion. It has not argued that it suffered any prejudice from the fact that the motion was filed fifteen rather than ten days after the judgment was entered. Under these circumstances, we conclude that the district court properly heard the motion for prejudgment interest.

## CONCLUSION

{34} We determine that substantial evidence supported the finding of an implied contract of employment that was breached when Village Inn terminated Hudson's employment. We also affirm the district court's inclusion of future bonuses in the calculation of damages, and the award of prejudgment interest. The judgments of the district court are affirmed.

{35} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Judge, and CYNTHIA A. FRY, Judge.