This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41976**

**HEATHER MARIE ESTES,**

      Petitioner-Appellee,

v.

**GLEN MARTIN WADLEIGH,**

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Cheryl H. Johnston, District Court Judge**

Heather M. Estes
Rio Rancho, NM

Pro Se Appellee

Glen M. Wadleigh
Casper, Wy

Pro Se Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**    Respondent Glen Martin Wadleigh appeals from the district court's final order in this dissolution of marriage case. We issued a notice of proposed summary affirmance proposing to affirm, and Respondent has responded with a memorandum in opposition, and motion to amend the docketing statement, which we have duly considered. We remain unpersuaded that our initial proposed summary disposition was incorrect, and we therefore affirm the district court.

**{2}**    We first address several motions filed by Respondent that are pending in this Court.

**{3}** Respondent's March 31, 2025, motion to declare the Rules of Civil Procedure unconstitutional; April 10, 2025, amended motion to declare the Rules of Civil Procedure unconstitutional; and April 25, 2025, modified motion to declare unconstitutional" are **DENIED**. *See* N.M. Const. art. VI, § 3 (granting the New Mexico Supreme Court "superintending control over all inferior courts"); *see also State v. Rivera*, 2012-NMSC-003, ¶ 7, 268 P.3d 40 (recognizing that the ultimate authority "to regulate all pleading, practice and procedure" resides in the Supreme Court (internal quotation marks and citation omitted)).

**{4}** Respondent's April 18, 2025, motion for extension of time until May 18, 2025, is **DENIED AS MOOT**. As of the date of the filing of this opinion, Respondent is not required to file any pleading or motion in this Court. *See generally* Rule 12-204 NMRA. Should Respondent require an extension of time for an optional filing, Respondent can make a motion specific to those circumstances.

**{5}** We now turn to the merits of the appeal. This case involves a petition for dissolution of marriage. The record reflects that the parties were married for fewer than seven months at the time Petitioner Heather Marie Estes filed the petition for dissolution. The record further reflects that the parties had no children in common, no debts, and negligible assets. The district court entered a final order regarding property and debts on April 26, 2024, and Respondent timely appeals from that order. [5 RP 5119, 5214]

**{6}** Respondent continues to argue that the district court failed to provide them with reasonable accommodation under the Americans with Disabilities Act (ADA). Specifically, Respondent asserts that they suffer from aphasia, which disability strips them of the ability to comprehend language for stretches of time if they become stressed. Respondent also asserts that they experience intermittent blurred vision, anxiety, PTSD, autism, paralysis, and other unspecified disabilities. [MIO 2]

**{7}** The United States Supreme Court has held that Title II of the ADA protects a qualified individual's fundamental "right of access to the courts." *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004). The ADA therefore creates an "affirmative obligation to accommodate persons with disabilities in the administration of justice." *Id.* at 533. Although courts must take reasonable measures to remove any barriers to accessibility, "Title II does not require [s]tates to employ any and all means to make judicial services accessible to persons with disabilities." *Id.* at 531-32. "It requires only reasonable modifications that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Id.* at 532. The record in this case reflects that the district court acted on Respondent's requests for ADA accommodations by: (1) providing information regarding hearings ahead of time and via email; (2) providing explanations of the process; (3) allowing only one person to speak at a time during hearings; (4) allowing extra time during hearings to process information and to give responses; (5) the use of plain language to facilitate communications; (6) avoiding the use of acronyms; (7) conducting hearings at a slower

pace; (8) allowing for breaks during hearings as needed; and (9) providing a sign language interpreter at Respondent's request. [3 RP 731-732]

{8}     These accommodations were sufficient to allow Respondent to communicate and participate in the court proceedings, and to the extent Respondent contends that the district court failed to provide these accommodations, we disagree, as the record contradicts that assertion. [3 RP 731-732, 4 RP 918-923] Additionally, insofar as Respondent argues they were entitled to additional accommodations in the form of a "qualified reader," or "a person trained in conveying language to [Respondent]," we disagree. [MIO 5] The purpose of qualified readers is to "[make] visually delivered materials available to individuals with visual impairments," and Respondent did not assert or demonstrate that their disability resulted in a visual impairment in district court. 42 U.S.C. § 12103(1)(B) (qualified readers).

{9}     Respondent takes issue with the manner in which the November 2, 2023, pretrial conference was conducted. [MIO 9-10, 19] Specifically, Respondent claims that they were not provided with accommodations to enable communication, that the hearing officer caused Respondent to suffer a seizure and paralysis, and that the hearing officer improperly ended the hearing after Respondent left in the middle of the hearing to walk his service dog. [MIO 9-10] These assertions are contradicted by the record below, and they provide no basis for relief. [4 RP 918-923; 5 RP 1091] Respondent also argues that the hearing officer improperly refused to allow them the use of speech-to-text application. [MIO 10-11, 19] The record reflects, however, that Respondent did not inform the district court prior to the hearing regarding the use of the application. Additionally, Respondent's manner of using the application was preventing the hearing from occurring. [4 RP 918-919] *Lane,* 541 U.S. at 532 (recognizing that Title II does not require states to provide accommodations that would fundamentally alter the nature of the service provided). Moreover, several other accommodations that Respondent requested to facilitate communication were provided during the hearing. [4 RP 918-919] Accordingly, there was no error in the hearing officer's refusal to allow the use of the application. *See id.*

{10}     Nor does the record support Respondent's contention that they were unable to communicate effectively in the proceedings without the assistance of a qualified reader, trained communicator, or other additional accommodations. The record is replete with Respondent's filings and motions, which as the district court noted, numbered in the thousands of pages. [22 RP 5126] These filings set out in detail Respondent's theory of the case, their concerns and contentions, and their objections to various aspects of the proceedings. *See generally Order & Report & Recommendation* at 6, *Ricks v. DMA Companies*, No. 1:22-CV-00773-RP (W.D. Tex. Sept. 19, 2024) (discussing that the plaintiff failed to demonstrate a need for a reading assistant because "[the p]laintiff has prepared and filed an extraordinary number of documents in this case and has over 20 boxes of legal materials" (internal quotation marks omitted)). The record also reflects that Respondent was able to present their arguments to the district court with respect to the issues in the dissolution proceeding, and the district court thoughtfully considered them in issuing its ruling. [22 RP 5119-5126] The record therefore does not support

Respondent's assertion that any further accommodations were necessary to enable effective communication below.

{11}    Respondent also continues to argue that both they and Petitioner required the appointment of guardians' ad litem in the proceedings below because neither party met the definition for legal competence. [MIO 11] We must decline, however, to consider Respondent's claims regarding Petitioner's mental state and Respondent's assertions regarding alleged criminal acts committed by Petitioner. Such issues were not properly before the district court in the proceedings below, and they are not before this Court on appeal. *See Valerio v. San Mateo Enters., Inc.*, 2017-NMCA-059, ¶ 37, 400 P.3d 275 (recognizing that where claims were not before the district court, no judgment could have been or was entered with respect to them); *In re Adoption of Doe*, 1976-NMCA-084, ¶ 4, 89 N.M. 606, 555 P.2d 906 (recognizing that matters that were not ruled on by the trial court are not before this Court on appeal).

{12}    Additionally, appointment of a guardian ad litem for litigants in a civil divorce proceeding is not an accommodation encompassed under the ADA. *See* § 12103(1) (defining auxiliary aids and services); *see also Robishaw v. Providence Prob. Ct.*, 206 F. Supp. 3d 723, 731-32 (D.R.I. 2016) (stating that "the statute expressly limits 'auxiliary aids and services' to those 'similar' to 'methods of making' 'aurally' and 'visually' delivered materials available to individuals with 'hearing' or 'visual' impairments," and recognizing that "[guardians ad litem] do not ensure disabled respondents' access to a court, at least not to a level that implicates Title II of the ADA"). Imposition of a guardianship is also not an accommodation contemplated under the ADA for civil litigants. *See generally* 28 C.F.R. § 35.160 (2010); *see also* NMSA 1978, § 45-5-303 (2019). We therefore reject Respondent's argument that the district court erred in not appointing a guardian ad litem for them below. We also reject Respondent's argument that the district court staff erred by failing to properly inform them regarding the process for initiating a guardianship or obtaining a guardian ad litem. [MIO 13-14]

{13}    Finally, to the extent Respondent asserts that the district court was required to provide Respondent's preferred method of accommodation, we disagree. [MIO 7] *See McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of [their] choice."). For these reasons, we hold that Respondent was not denied reasonable accommodations under the ADA.

{14}    Respondent next continues to argue that they have provided evidence that Petitioner lied in the district court proceedings below. [MIO 15] We do not consider this argument because this Court does not review claims that witnesses lied in the lower court proceedings. As this Court lacks any opportunity to observe demeanor, we cannot weigh the credibility of live witnesses. *See Tallman v. ABF (Ark. Best Freight)*, 1988-NMCA-091, ¶ 3, 108 N.M. 124, 767 P.2d 363, *holding modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148; *see also Williams v. Williams*, 1989-NMCA-072, ¶ 7, 109 N.M. 92, 781 P.2d 1170

(explaining that the duty to weigh the credibility of witnesses and to resolve conflicts in the evidence lies with the district court, not the appellate court).

**{15}**    We next reject Respondent's contention that Respondent and Petitioner were parties to an irrevocable and binding "family contract" in which Petitioner assumed permanent parental rights over Respondent's children and was required to pay child support. [MIO 15-16] We find no legal support for such contentions, nor has Respondent cited to any. *See Curry v. Great Nw. Ins. Co.*, 2014-NMSC-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *ITT Educ. Servs., Inc. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority).

**{16}**    To the extent Respondent contends that this alleged arrangement between the parties was memorialized in a contract, no such contract was introduced into evidence. [MIO 15-16] *See Kepler v. Slade*, 1995-NMSC-035, ¶ 13, 119 N.M. 802, 896 P.2d 482 ("Matters outside the record present no issue for review." (internal quotation marks and citation omitted)). We note, however, that the district court has no discretion to deny a divorce. *See Joy v. Joy*, 1987-NMCA-031, ¶ 12, 105 N.M. 571, 734 P.2d 811 ("In New Mexico, where jurisdiction, residence and the fact of incompatibility is shown to exist, the court has no discretionary right to deny the divorce."); *see also Spruyt v. Spruyt*, 1993-NMSC-020, ¶ 5, 115 N.M. 405, 851 P.2d 1072 (discussing "the right to divorce on the grounds of incompatibility"). Moreover, adoption and the resulting creation of parental rights is governed by statute in New Mexico, and we find no support for the proposition that parental rights and responsibilities can be conferred by contract and in the absence of a court order. *See* NMSA 1978, §§ 32A-5-1 to -45 (1993, as amended through 2022) (setting out the procedure for adopting children in New Mexico); *see also State ex rel. Hum. Servs. Dep't* (*In Re Kira M.*), 1994-NMSC-109, ¶ 9, 118 N.M. 563, 883 P.2d 149 (stating that the legal power to adopt children is entirely a creature of statute because there were no adoptions at common law).

**{17}**    We next understand Respondent to argue that the district court erred in determining that the service dog belonged to Respondent. We understand Respondent to argue that the dog was acquired as mutual property under Texas law, the dog was acquired as an asset of a business that was co-owned by the parties, and that Petitioner is permanently responsible for the behavior of the dog for the life of the dog. [MIO 16-17] We find no error in the district court's finding that Respondent owned the service dog, however, as it appears to have been based on sufficient testimony and evidence before it. *See Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207 (stating that we review the district court's findings of fact for substantial evidence).

**{18}**    We recognize that Respondent contends that there was evidence below that would have supported a different finding on this issue. However, under our standard of review, we do not review the evidence to determine whether different factual findings could have been made. *See Mayeux v. Winder*, 2006-NMCA-028, ¶ 11, 139 N.M. 235, 131 P.3d 85 (recognizing that on review of the district court's factual findings, the

presence of evidence supporting the opposite result is not relevant); *Hudson v. Vill. Inn Pancake House of Albuquerque, Inc.*, 2001-NMCA-104, ¶ 8, 131 N.M. 308, 35 P.3d 313 ("The fact that other evidence existed which would have supported different findings does not require reversal.").

**Motion to Amend the Docketing Statement**

**{19}**    Respondent also raises additional issues that were not raised in the docketing statement. This is permissible. *See* Rule 12-208(F) NMRA (allowing for amendment of the docketing statement); *State v. Rael*, 1983-NMCA-081, ¶¶ 15-16, 100 N.M. 193, 668 P.2d 309. We therefore accept these arguments as a motion to amend the docketing statement and consider those issues accordingly.

**{20}**    Respondent argues that they were unable to timely present additional evidence to the district court because they did not understand when the deadline for presenting evidence occurred due to the lack of a qualified reader. [MIO 18] However, as discussed, the record reflects that Respondent was able to present their evidence and theory of the case. Insofar as Respondent contends that they had other unspecified evidence that could have been presented, we find this assertion too speculative to establish any error below. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the burden is on the respondent to demonstrate their assertion of error).

**{21}**    Respondent asserts that Petitioner was their "agent of record," and Respondent was therefore officially an "incapacitated person" when Petitioner filed the petition for dissolution of marriage in New Mexico. We find no support in the record for these assertions, no legal authority in support of such contentions, and they provide no basis for relief. *See Kepler*, 1995-NMSC-035, ¶ 13 ("Matters outside the record present no issue for review." (internal quotation marks and citation omitted)).

**{22}**    Respondent also contends that the district court illegally ordered them to "throw away" controlled substances belonging to Petitioner and refused to hold Petitioner accountable for her personal property that is in storage. [MIO 19-20] The record reflects that the district court noted that Petitioner had disclaimed any interest in personal property, and, accordingly, Respondent was free to dispose of any such personal property. The district court did not order Respondent to "throw away" any controlled substances. [22 RP 5123] We find no error in the district court's findings. To the extent Respondent asserts that they are prevented from disposing of the property due to their subjective fear of Petitioner and unspecified Texas laws, we hold that these circumstances provide no basis for reversal of the district court's order.

**{23}**    Finally, we acknowledge, as Respondent points out, that this Court filed a document containing one instance of a typographical error with respect to the use of Respondent's preferred pronouns. [MIO 3] This Court apologizes for the oversight. Such an error provides no basis for reversal of the judgment below or any other relief with

respect to the district court's order granting the petition for dissolution of marriage, however.

**{24}** For these reasons, we affirm the district court.

**{25}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**